# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JANICE LYNN FRENCH,**<br>**Plaintiff,**<br>v.<br>**NANCY A. BERRYHILL**, Acting<br>**Commissioner of Social Security,**<br>**Defendant.** | **NO. EDCV 17-0566-KS**<br><br>**MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

Janice Lynn French ("Plaintiff") filed a Complaint on March 24, 2017, seeking review of the denial of her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (Dkt. No. 1.) The parties have consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 10, 12-13.) On December 18, 2017, the parties filed a Joint Stipulation. (Dkt. No. 21 ("Joint Stip.").) Plaintiff seeks an order reversing the Commissioner's decision and remanding the matter for further administrative proceedings. (Joint Stip. at 26.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings. (*Id.*) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On January 14, 2013, Plaintiff, who was born on June 3, 1964[1], protectively filed an application for SSI. (Administrative Record ("AR") 33, 214-19.) Plaintiff alleged disability commencing on January 22, 2009 due to a heart condition, chronic obstructive pulmonary disease, and depression. (AR 103.) Plaintiff had no past relevant work. (AR 41.) After the Commission denied Plaintiff's application initially (AR 116-20), and on reconsideration (AR 125-28), Plaintiff requested a hearing (AR 131-32).

At a hearing held on July 13, 2015, at which Plaintiff appeared with counsel, an Administrative Law Judge ("ALJ") heard testimony from Plaintiff and a vocational expert ("VE"). (AR 47-78.) On September 2, 2015, the ALJ issued an unfavorable decision denying Plaintiff's application for SSI. (AR 33-42.) On January 31, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-3.)

## SUMMARY OF ADMINISTRATIVE DECISION

Applying the five step sequential evaluative process, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her January 14, 2013 application date and at step two, that Plaintiff had the following severe impairments: lumbar spine degenerative disc disease, cervical spine degenerative disc disease, osteoarthritis of the left foot, coronary artery disease status post tricuspid valve replacement, chronic obstructive pulmonary disease, obesity, and obstructive sleep apnea. (AR 35.) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in the Commissioner's Listing of

---

[1] Plaintiff was 48years old when she filed her SSI application and, therefore, considered a "younger individual" under agency guidelines (20 CFR 416.963). (AR 41) She later changed age category to "closely approaching advanced age." (*Id.*)

2

Impairments. (AR 37.) The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work as follows: lift/carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk for six hours in an eight-hour workday; and she is precluded from fumes, dusts, gases, and hazards. (AR 37.) For purposes of step four, Plaintiff had no past relevant work. (AR 41.) However, at step five, the ALJ concluded, based on the testimony of the VE, that Plaintiff could perform other work existing in significant numbers in the national economy, specifically, the occupations of cashier, DOT 211.462-010, a light, unskilled occupation; ticket taker, DOT 344.667-010, a light, unskilled occupation; and electronics worker, DOT 726.687-010, a light, unskilled occupation (AR 42). Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.*)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted);

*Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

Plaintiff alleges the following three errors: (1) the ALJ failed to account for all of the relevant medical evidence in determining Plaintiff's RFC; (2) the ALJ failed to properly evaluate the credibility of Plaintiff's subjective symptom testimony; and (3) the ALJ's step five determination involves unresolved conflicts with the Dictionary of Occupational Titles ("DOT"). (Joint Stip. at 3.)

For the reasons discussed below, the Court concludes that these issues do not warrant reversal of the ALJ's decision.

//
//
//
//

## I. RFC Determination (Issue One)

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to account for all of the relevant medical evidence. (Joint Stip. at 4-7.) Specifically, Plaintiff argues that the ALJ erred by relying on an examining physician's opinion that was out of date because much of the relevant medical evidence was generated after the examination. (*Id.* at 6-7.) Defendant maintains that the ALJ identified substantial record evidence to support his RFC finding and the RFC determination is free of legal error. (*Id.* at 8-12.)

### A. Applicable Law

A claimant's RFC represents the most a claimant can do despite his or her limitations. 20 C.F.R. § 416.945 (a)(1); *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998); *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An ALJ's RFC determination "must set out *all* the limitations and restrictions of the particular claimant." *Valentine v. Commissioner*, 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original).

An ALJ also has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even when the claimant is represented by counsel. *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Although the burden to establish disability lies with the claimant, "it is equally clear that the ALJ has a duty to assist in developing the record." *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001) (citation omitted). The ALJ's duty to develop the record is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001).

//
//

**B. Analysis**

In March 2013, Plaintiff was examined by Dr. Concepcion Enriquez. (AR 279-82.) After reviewing the available medical records (AR 279) and examining Plaintiff (AR 280-82), Dr. Enriquez diagnosed her with a history of a tricuspid valve replacement, chronic obstructive pulmonary disease, and chest pain (AR 282). Dr. Enriquez concluded that Plaintiff was capable of a range of light work: lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk for six hours in an eight-hour workday; and avoid extreme temperatures, dust, chemicals, and fumes. (*Id.*) The ALJ afforded "great weight" to Dr. Enriquez's opinion. (AR 40.)

Plaintiff contends that the ALJ's reliance on Dr. Enriquez's opinion was reversible error because much of the medical evidence was generated after Dr. Enriquez conducted the examination in March 2013. (Joint Stip. at 6-7.) In particular, Dr. Enriquez's opinion was unreliable, according to Plaintiff, because it did not account for Plaintiff's liver cirrhosis, sleep apnea, and the general deterioration of her other conditions after the examination. (*Id.*) In other words, the entire medical record should have been "considered by a medical professional who could render an updated and current assessment." (*Id.* at 7.) Although the gravamen of Plaintiff's claim is not entirely clear, the Court construes it as an argument that the ALJ failed to fully and fairly develop the record with an updated and current assessment by a medical professional, presumably an examining physician or a medical expert.

**1. Updated Consultative Examination**

The Commissioner has "broad latitude in ordering a consultative examination," but some types of cases do "normally require a consultative examination," including those in which "additional evidence needed is not contained in the records of [the claimant's] medical sources," and those involving an "ambiguity or insufficiency in the evidence [that]

6

must be resolved." *Reed*, 270 F.3d at 842 (alterations in original). For example, a consultative examination will be ordered when "[t]here is an indication of a change in your condition that is likely to affect your ability to work." 20 C.F.R. § 416.919a(b)(4). But "because it is always possible to identify one more test or examination an ALJ might have sought, the ALJ's reasoned judgment of how much evidence to gather should generally be respected." *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) (citation omitted). In particular, where, as in this case, a consultative examination has already been performed, the mere passage of time between that examination and the administrative hearing does not necessarily demonstrate the necessity for another consultative examination. *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

To the extent Plaintiff argues that a second consultative examination should have been performed in this case, she has not demonstrated that the ALJ's failure to order it was unreasonable, in light of either the conditions that already existed at the time of Dr. Enriquez's March 2013 examination, or the conditions that arose after the examination. Dr. Enriquez fully accounted for Plaintiff's two most serious conditions, a heart condition and breathing difficulties. (AR 282.) Plaintiff's heart condition generally showed no changes after Dr. Enriquez's March 2013 examination (AR 337, 386, 477), with the exception of one episode of atrial flutter/fibrillation that quickly resolved with treatment (AR 397). And although Plaintiff continued to seek medical attention for breathing difficulties after the March 2013 examination, usually through emergency room visits, the medical findings were mild (AR 297, 305, 314, 323, 331, 372, 382, 450) or showed no difficulty with breathing (AR 315, 352, 361, 374, 376, 379). Moreover, Plaintiff's emergency room visits for shortness of breath resulted in diagnoses for conditions that were easily treatable: mild bronchitis (AR 327), pneumonia (AR 390), and upper respiratory infection (AR 445). The ALJ discussed and fully accounted for the evidence of Plaintiff's heart condition and breathing difficulties after Dr. Enriquez's March 2013 examination. (AR 40.) From this

record, neither the heart condition nor the breathing difficulties evidenced a change of condition that required the ALJ to order a second consultative examination.

As Plaintiff points out, two of her impairments, liver cirrhosis and sleep apnea, were diagnosed after Dr. Enriquez's March 2013 examination. (Joint Stip. at 6.) Neither condition was sufficiently serious to warrant a second consultative examination. The liver cirrhosis was diagnosed during a March 2015 visit to the emergency room (AR 385, 440), but the record shows no subsequent treatment for liver cirrhosis. The ALJ therefore determined at step two that Plaintiff's liver cirrhosis was not a "severe" impairment, a determination which Plaintiff does not challenge. The sleep apnea, which was diagnosed in October 2014 (AR 368), eventually led to sleep studies that were considered successful: Plaintiff "woke refreshed and well rested," had no trouble falling asleep, and was prescribed a CPAP mask. (AR 378-79.) The ALJ accounted for the evidence of both of these conditions. (AR 36, 40.) Accordingly, neither the liver cirrhosis nor the sleep apnea was a condition that had to be further investigated by the ALJ through a second consultative examination.

In sum, evidence of the conditions that existed at the time of the consultative examination, as well as evidence of the conditions that were diagnosed after the examination, is insufficient for the Court to conclude that the ALJ's failure to order a second consultative examination was unreasonable. Other courts have similarly concluded that an ALJ's reasoned judgment in this regard should be respected. *See Howard*, 379 F.3d at 949 (holding that a second consultative examination was not required where the ALJ acknowledged claimant's allegation of a worsening condition but concluded it was controlled with medication); *Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001) (same where the ALJ had numerous medical reports for the period after the first examination); *Johnson v. Commissioner, Social Sec. Admin.*, 618 F. App'x 544, 551 (11th Cir. 2015) (same where the initial consultative examination and other relevant evidence were sufficient for the ALJ to make an informed decision based on the record before him); *Poyck v. Astrue*, 414 F.

App'x 859, 861-62 (7th Cir. 2011) (same where the claimant failed to show sufficient deterioration of his conditions after the first consultative examination); *Sanders v. Astrue*, 879 F. Supp. 2d 930, 938-39 (N.D. Ill. 2012) (two-year gap between consultative examination and administrative hearing did not require a second examination because "it is not as though the record is void of evidence from this period"); *McKim v. Colvin*, 2014 WL 4161782, at *7 (M.D. La. Aug. 19, 2014) (collecting cases finding no error in the ALJ's failure to order a second consultative examination); *see generally Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994) (commenting that although an ALJ has a heavy burden to thoroughly investigate pain allegations, "it does not go so far as to require the ALJ to update objective medical evidence to the time of hearing"). The Court finds these authorities to be persuasive. Accordingly, this issue does not warrant reversal of the ALJ's decision.

### 2. Medical Expert Testimony

In two limited circumstances, both involving medical equivalence at step three, an ALJ must call a medical expert: (1) when the ALJ opines that an already existing case record suggests that a judgment of equivalence may be reasonable; or (2) when an updated case record may change the findings of the State agency medical consultants on the issue of equivalence. SSR 96-6p, 1996 WL 374180, at *4. Neither of these circumstances existed here. Plaintiff has not even suggested that she is disabled under a theory of equivalence to a listed impairment. Thus, the ALJ was not required to call a medical expert on this basis.

Otherwise, the decision whether to obtain medical expert testimony is within the ALJ's discretion, and he need not obtain such evidence when he already has a record that is sufficient to make a disability determination. *See Flener*, 361 F.3d at 448 (with respect to medical expert testimony, "the ALJ's reasoned judgment of how much evidence to gather should generally be respected"); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (an ALJ need not obtain medical expert testimony when the record is sufficient to make a

disability determination). For the same reasons that the ALJ's failure to order a second consultative examination was not unreasonable, as discussed above, it also was not unreasonable for the ALJ to fail to call a medical expert. Accordingly, this issue also does not warrant reversal of the ALJ's decision.

## II. Plaintiff's Subjective Symptom Complaints (Issue Two)

Plaintiff contends that the ALJ failed to provide legally sufficient reasons to reject her subjective symptom complaints and testimony regarding her symptoms and limitations. (Joint Stip. at 12-16.) Defendant argues that the ALJ's determination that Plaintiff's subjective symptom testimony was not fully credible is well supported by the record and free of legal error. (*Id.* at 16-22.)

### A. Applicable Law

An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015); *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear and convincing standard").

10

In weighing a plaintiff's credibility, the ALJ may consider a number of factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony . . . that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). [2] The ALJ must also "specifically identify the testimony [from the claimant that] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). "General findings are insufficient." *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

**B.  Analysis**

During the administrative hearing, Plaintiff testified about how her impairments affect her ability to function in her daily life. (AR 51-73.) She testified that her last job was in 2004 at a restaurant, but she was let go because of breathing problems. (AR 55-56.) She has pain in her neck, back, and feet. (AR 57.) She stated she can walk for 100 yards but cannot carry a load of laundry or perform other chores such as vacuuming, mopping, or yard work. (AR 58.) On a typical day, she watches television, prepares simple meals, and takes care of her personal grooming. (AR 59.) She shops for groceries and occasionally visits her

---

[2] Effective March 28, 2016, Social Security Ruling ("SSR") 16-3p superseded SSR 96-7p, which required the ALJ to assess the credibility of a claimant's statements. SSR 16-3p focuses on the existence of medical cause and an evaluation of "the consistency of the individual's statements about the intensity, persistence, or limiting effects of symptoms with the evidence of record without consideration of the claimant's overall 'character or truthfulness'." *See* Guide to SSA Changes in Regulations and Rulings 2016-17, June 2017. The revision is not applicable to Plaintiff's application here, which was protectively filed on January 14, 2013. (*See* AR 33.). But the Ninth Circuit has acknowledged that SSR16-3p is consistent with existing precedent that requires that the assessment of an individual's testimony be focused on evaluating the "intensity and persistence of symptoms" after the ALJ has found that the individual has medically determinable impairments that could reasonably be expected to produce those symptoms. *Trevizo v. Berryhill*, 862 F.3d 987, 1000, n.5 (9th Cir. 2017).

11

daughter, but she otherwise rarely goes out. (AR 60-61.) Her heart problem causes difficulty with lifting things or breathing. (AR 63-64.) Because of sleep apnea, she naps during the day. (AR 66.) Because of liver cirrhosis, her leg is numb and purple. (AR 67.) She smokes half a pack of cigarettes each day. (AR 69.)

In addition to testifying at the hearing, Plaintiff submitted a written report further describing her symptoms and daily activities. (AR 240-48.) She has a very hard time breathing and moving around, and sleeps only a few hours per night. (AR 240.) She makes simple meals for her elderly roommate and cares for his cat. (AR 241, 247.) She is able to perform personal care, prepare simple meals, and wash dishes. (AR 241-42.) She can go out alone and goes shopping once a month. (AR 243.) She can walk for 200 feet at a time. (AR 245.)

The ALJ determined that Plaintiff's "allegations concerning the intensity, persistence and limiting effects of her symptoms are less than fully credible." (AR 38.) The ALJ supported his credibility determination with three reasons. (*Id*.)

First, the ALJ found that Plaintiff's allegations are "inconsistent with the objective medical evidence, which indicates an attempt by [Plaintiff] to exaggerate the severity of her symptoms." (AR 38.) Specifically, the ALJ explained: "despite [Plaintiff's] allegations of significant breathing difficulty, examination findings were mild"; "[m]any findings did not show any difficulty with breathing or wheezing"; "[e]mergency reports did not indicate COPD or significant breathing restriction"; despite allegations of neck pain, "the record showed no treatment for neck issues"; and "[f]indings from examinations showed her musculoskeletal system was normal." (*Id*.)

The record supports the ALJ's findings about the objective medical evidence in each of the three discussed areas: breathing difficulties, neck pain, and musculoskeletal problems.

As for breathing difficulties, the record shows that Plaintiff repeatedly went to emergency rooms with complaints of shortness of breath (AR 321, 341, 381, 445) and was diagnosed with chronic obstructive pulmonary disease (AR 304, 344). But examination findings were generally mild (AR 297, 305, 314, 323, 372), many findings showed no difficulty with breathing (AR 315, 352, 361, 374, 376, 379), emergency records did not indicate significant breathing restriction (AR 323, 331, 382, 450), and there was no evidence of acute cardiopulmonary disease (AR 467). As for neck pain, the record does show that Plaintiff was diagnosed with degenerative changes in the cervical spine (AR 302, 468), but it does not show any treatment for that condition. As for musculoskeletal issues, findings from examination were normal. (AR 281.)

In light of this record support, the ALJ was entitled to rely on inconsistencies with the objective medical evidence as one of the reasons to discount Plaintiff's subjective symptom allegations. *See, e.g., Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may reject a claimant's testimony by citing the conflict between that testimony and the objective medical evidence in the record).

Second, the ALJ found that Plaintiff engaged in "a rather normal level of everyday activities despite her alleged limitations." (AR 38.) Plaintiff admitted she "was able to watch television, do some household chores, shop, go out alone, and take care of personal hygiene," from which the ALJ concluded that "many of the tasks described above replicate those necessary for obtaining and maintaining employment." (*Id.*; *see also* AR 59-60, 241-42, 243, 247.) This also was a clear and convincing reason on which the ALJ was entitled to rely to discount Plaintiff's subjective symptom allegations. *See Burch*, 400 F.3d at 681 (ALJ was entitled to infer that a claimant's daily activities involved skills that could be transferred to a workplace when the claimant was "able to care for her own personal needs, cook, clean

13

and shop" and "interact[] with her nephew and her boyfriend"); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) ("Curry indicated that she was able to take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries."). Although the evidence of Plaintiff's daily activities "may also admit of an interpretation more favorable to [her], the ALJ's interpretation was rational, and we must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Burch*, 400 F.3d at 681 (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)) (internal quotation marks omitted).

Third, the ALJ found that Plaintiff "worked only sporadically prior to the alleged disability onset date" of January 22, 2009. (AR 39.) This too was a clear and convincing reason to discount Plaintiff's subjective symptom allegations. Plaintiff's employment history reflected only a few jobs, several years between jobs, and a final job in 2004. (AR 55, 221, 224.) An ALJ may rely on a claimant's poor work history as an adverse credibility factor. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) ("Ms. Thomas' work history was spotty, at best, with years of unemployment between jobs, even before she claimed disability."); *Aarestad v. Commissioner of Social Sec. Admin.*, 450 F. App'x 603, 604 (9th Cir 2011) ("The evidence showed that Aarestad worked only sporadically before the alleged onset of disability (which suggests that her decision not to work was not based on disability)."); *see also Tommasetti*, 533 F.3d at 1040 (ALJ may infer from a claimant's work history that he stopped working for reasons other than disability and that he lacked motivation to work).

In sum, the ALJ provided three clear and convincing reasons supported by the record evidence to conclude that Plaintiff's subjective symptom allegations were less than fully credible. Accordingly, Issue Two does not warrant reversal of the ALJ's decision.

//
//

14

### III. Step Five Determination (Issue Three)

Plaintiff contends that the ALJ erred at step five by relying on the WE's testimony about three jobs that each raised an apparent and unresolved conflict with the Dictionary of Occupational Titles ("DOT"). (Joint Stip. at 22-23.)

#### A. Applicable Law

At step five of the Commissioner's sequential evaluation process, "the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012). The DOT is the Commissioner's "primary source of reliable job information" and creates a rebuttal presumption as to a job classification. *Johnson v. Shalala*, 60 F.3d 1428, 1434 n.6, 1435 (9th Cir. 1995); *see also Tommasetti*, 533 F.3d at 1042. Where, as here, the testimony of a VE is used at step five, the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2001); *Burkhart v. Bowen*, 856 F.2d 1335, 1340 n.3 (9th Cir. 1988); 20 C.F.R. § 416.966(b).

However, an ALJ may not rely on a VE's testimony regarding the requirements of particular jobs that the claimant might be able to perform without first inquiring of the VE whether his testimony conflicts with the DOT and without obtaining a reasonable explanation for any apparent conflicts. *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social Security Ruling 00-4p). An ALJ may rely on VE testimony that contradicts the DOT only insofar as the record contains persuasive evidence to support the deviation. *Johnson*, 60 F.3d at 1435; *see also Tommasetti*, 533 F.3d at 1042; *Light v. Social Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997).

## B. Analysis

The Commissioner contends that Plaintiff waived this claim by failing to raise it before the ALJ at the administrative hearing. (Joint Stip. at 23-24.) To the contrary, a claimant's failure to raise a DOT conflict at the administrative level does not waive judicial review of the issue, because the Commissioner's own rulings impose an affirmative duty on the ALJ to resolve a DOT conflict without regard to how the conflict was identified. *See Lamear v. Berryhill*, 865 F.3d 1201, 1206 and n.5 (9th Cir. 2017) ("[O]ur law is clear that a counsel's failure does not relieve the ALJ of his express duty to reconcile apparent conflicts [with the DOT] through questioning") (citing Social Security Ruling 00-04p); *Shaibi v. Berryhill*, 870 F.3d 874, 882 (9th Cir. 2017) ("It is true that an ALJ is required to investigate and resolve any apparent conflict between the VE's testimony and the DOT, regardless of whether a claimant raises the conflict before the agency."), *as amended and superseded,* 2017 WL 7798666 (9th Cir. Feb. 28, 2018). Thus, this claim is not waived.

### 1. Electronics Worker

One of the occupations identified by the VE at step five was electronics worker (DOT 726.687-010). (AR 74.) Plaintiff contends that the VE's testimony in this regard raised an apparent conflict with the ALJ's RFC determination that Plaintiff must avoid fumes, dusts, gases, and hazards. (Joint Stip. at 22.)

According to the DOT, an electronics worker is exposed to "toxic caustic chemicals" on an occasional basis, meaning that the condition exists up to one-third of the time. DOT 726.687-010. An electronics worker must also use handtools, power tools, and heating equipment in order to assemble and disassemble parts. *Id*. On the other hand, an electronics worker is not exposed to "atmospheric conditions" or any other irritants that would interfere with, for example, a worker who has breathing problems. *Id*.

The Commissioner relies on the absence of atmospheric conditions and air pollutants for the electronics worker occupation to argue that no conflict arose. (Joint Stip. at 24-25.) This argument is not well-taken because it is under-inclusive of what the ALJ found. The ALJ did not find that Plaintiff must avoid only atmospheric conditions or air pollutants. Rather, the ALJ found that Plaintiff must also avoid "hazards," a broad term that encompasses more than just atmospheric conditions or air pollutants. Indeed, the Commissioner's own relevant definition of "hazards" appears to contemplate two working conditions for the electronics worker occupation: (1) the various types of tools and equipment that must be used by an electronics worker, and (2) the occasional exposure to toxic, caustic chemicals. *See* Social Security Ruling 96-9P, 1996 WL 374185, at *9 (defining "hazards," for purposes of the DOT, to include "moving mechanical parts of *equipment, tools, or machinery*; electrical shock; working in high, exposed places; exposure to radiation; working with explosives; and exposure to *toxic, caustic chemicals*") (emphasis added). Thus, the Commissioner's focus on atmospheric conditions and air pollutants does not fully address the scope of the conflict for this occupation. Since the ALJ precluded Plaintiff from exposure to a broad category of "hazards," the ALJ's finding as to the electronics worker occupation raised an apparent and unresolved conflict with the DOT.

This error is insufficient, however, to warrant reversal of the ALJ's decision. As the Commissioner points out (Joint Stip. at 25), even if the occupation of electronics worker raised an apparent and unresolved conflict with the DOT, the ALJ's error in relying on that occupation would be harmless in light of the other two alternative occupations cited in the step five determination, as discussed below. *See Buckins v. Berryhill*, 706 F. App'x 380, 381 (9th Cir. 2017) (unresolved DOT conflicts amount to harmless error where the ALJ identifies alternative occupations yielding a significant number of jobs).

//
//

17

### 2. Cashier and Ticket Taker

The other two occupations identified by the VE at step five were cashier (DOT 211.462-010) and ticket taker (DOT 344.667-010). (AR 73-74.) According to the DOT, both occupations are classified as "light," meaning that the worker would have to exert 20 pounds of force occasionally and 10 pounds of force frequently. DOT 211.462-010, 344.667-010. Neither occupation involves exposure to any atmospheric conditions or any hazards such as toxic, caustic chemicals. *Id.* Although the cashier occupation does involve the use of an adding machine or cash register, it does not involve the use of potentially hazardous equipment, tools, or machinery. DOT 211.462-010.

As VE testified, the occupation of cashier has more than a million jobs in the national economy, and the occupation of ticket taker has more than 60,000 jobs in the national economy. (AR 73-74.) Plaintiff does not dispute these numbers, which together or alone easily clear the threshold for a significant number of jobs. *See Gutierrez*, 740 F.3d at 528 (holding that 25,000 national jobs constitute a significant number). Plaintiff's only argument in this regard is that she cannot perform the light job requirements for either of these occupations. (Joint Stip. at 22.) But she has not demonstrated error in the ALJ's determination that she can perform light work, for all of the reasons discussed above. Thus, this issue does not warrant reversal of the ALJ's decision.

## CONCLUSION

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: March 13, 2018

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE